The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on November 19, 2015, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: November 19, 2015**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re: ) | Case No. 14-14938 |
| ) | |
| TIMOTHY TSIRAMBIDIS & ) | |
| JULIE V. TSIRAMBIDIS, ) | Chapter 7 |
|     Debtors. ) | |
| _____ ) | |
| ) | Adversary Proceeding |
| MARY ANN RABIN, Trustee, ) | No. 15-1082 |
|     Plaintiff, ) | |
| ) | |
| v. ) | Judge Arthur I. Harris |
| ) | |
| FIFTH THIRD BANK, *et al.*, ) | |
|     Defendants. ) | |

### MEMORANDUM OF OPINION[1]

This adversary proceeding is currently before the Court on the motion of plaintiff-trustee ("trustee") for partial summary judgment against defendants Fifth Third Bank and Daniel and Marina Eliopoulos (Docket No. 17). Pursuant to

---

[1] This Memorandum of Opinion is not intended for official publication.

11 U.S.C. §§ 544(b) & 550 and Ohio Rev. Code §§ 1336.04 & 05(A), the trustee seeks to recover payments that the debtors, Timothy and Julie Tsirambidis, made to Fifth Third Bank.  For the reasons that follow, the trustee's motion for partial summary judgment on the issue of reasonably equivalent value is denied.  In addition, pursuant to Rule 56(f), the Court will give the trustee until December 14, 2015, to brief the issue of whether the defendants themselves are entitled to summary judgment.

PROCEDURAL AND FACTUAL HISTORY

On July 31, 2014, the debtors filed their Chapter 7 petition.  On May 13, 2015, the trustee filed this adversary proceeding against defendant Fifth Third Bank seeking to avoid $29,500 in payments that the debtors made to Fifth Third Bank.  In addition, the trustee seeks a money judgment pursuant to 11 U.S.C. § 550.  On June 8, 2015, Julie Tsirambidis's parents, Daniel and Marina Eliopoulos ("Eliopouloses"), filed a motion to intervene as party defendants (Docket No. 4) which the Court granted (Docket No. 9).  Pursuant to a briefing and scheduling order (Docket No. 10), the parties filed a stipulation of facts (Docket No. 16); the trustee filed a motion for partial summary judgment on the issue of reasonably equivalent value (Docket No. 17); and defendants Fifth Third Bank and the Eliopouloses filed timely briefs in opposition (Docket Nos. 18

2

15-01082-aih    Doc 20    FILED 11/19/15    ENTERED 11/19/15 12:46:58    Page 2 of 13

and 19).

The parties stipulated to the following facts:

1.  Intervening Defendants Daniel and Marina Eliopoulos (the "Eliopouloses") are the parents of debtor Julie V. Tsirambidis.

2.  On or about December 28, 1999, the Eliopouloses obtained from Defendant, Fifth Third Bank, a certain Line of Credit in the original gross sum of $75,000 secured by a mortgage upon their residence located at 2325 Auberry Drive in the City of Akron, Ohio (the "Line of Credit").

3.  On or about February 3, 2000, the Debtors, Timothy and Julie Tsirambidis (hereinafter referred to as "Debtors"), obtained from the Eliopouloses from the Line of Credit the sum of $65,000 which funds the Debtors used as a down payment to purchase the real property located at 4467 Broadview Road in the City of Cleveland, Ohio.

4.  The Debtors orally agreed to repay the loan from the Eliopouloses by making all payments that came due upon the Line of Credit until such obligation was paid in full.

5.  In March of 2008, the Eliopouloses executed an Equity Flexline Credit Agreement (the "New Line of Credit"). The amount available under the New Line of Credit was $80,000.

3

6. The amount of $58,940.97 was debited from the New Line of Credit to close the first Line of Credit.

7. There is no written agreement between the Debtors and the Eliopouloses regarding the $65,000 advanced by the Eliopouloses to the Debtors.

8. On July 31, 2014, the Debtors filed their voluntary petition under Chapter 7 of the Bankruptcy Code with this Court.

9. In the four years preceding the filing of the bankruptcy, monthly payments of $500.00 were made on the Line of Credit totaling $23,340.00. Of these, the Eliopouloses made one monthly payment in August 2013 on the New Line of Credit totaling $500.00. The other payments were made by checks written from Debtors' accounts or out of accounts of entities wholly owned by one or both Debtors.

10. On Schedule F, the Debtors scheduled a debt owed to Marina Eliopoulos in the remaining sum of $23,966.38, which was the amount then owing on the New Line of Credit.

11. On Schedule J, the Debtors scheduled a monthly expense of $500 as "payment to Marina Eliopoulos for use of [Line of Credit]." (Docket No. 16).

Separate from the fact stipulation signed by all parties, the Eliopouloses attached to their brief in opposition an affidavit from debtor Timothy Tsirambidis.

4

In his affidavit, Timothy Tsirambidis contends that: (1) the $65,000 loan from the Eliopouloses was not a down payment, but the full purchase price of the real property that the debtors purchased; (2) he "orally agreed to repay the loan from the Eliopouloses by making payments in the minimum amount of $500 per month to Fifth Third Bank until [he] was able to pay the Line of Credit in full[;]" and (3) he unsuccessfully listed the property for sale in order to repay the Line of Credit.

## JURISDICTION

This Court has jurisdiction over this action. An action seeking recovery of a fraudulent transfer is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (H). This Court has jurisdiction over core proceedings pursuant to 28 U.S.C. §§ 157(a) and 1334 and Local General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio. All parties have expressly consented to this Court entering final judgment in this proceeding.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). Although Rule 56 was amended in 2010, the amendments did not substantively change the summary judgment standard. *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A court reviewing a motion for summary judgment cannot weigh the evidence or make credibility determinations." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569 (6th Cir. 2012). "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Id.* at 570. "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Yeschick v. Mineta*, 675 F.3d 622, 632 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Furthermore, "[a]fter giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant" or "grant the motion on grounds not raised by a party." Fed. R. Civ. P. 56(f); Fed. R. Bankr. P. 7056.

DISCUSSION

In her motion, the trustee asserts that, pursuant to 11 U.S.C. §§ 544(b) & 550 and Ohio Rev. Code § 1336.05(A), payments totaling $16,250 made by the debtors to Fifth Third Bank were fraudulent transfers in exchange for which the debtors did not receive "reasonably equivalent value." Although the

6

trustee originally sought $29,500 in her complaint, she revised this figure in her motion for partial summary judgment and is now only seeking the recovery of $16,250. Section 544(b)(1) of the Bankruptcy Code provides that:

> the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

The applicable law here is that of Ohio. Under the Ohio Uniform Fraudulent Transfer Act ("UFTA"):

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Ohio Rev. Code § 1336.05(A). The UFTA allows for claims for relief for fraudulent transfers within four years from the date the transfer was made. Ohio Rev. Code § 1336.09(B). To prove that a transfer within the four-year period was fraudulent, the trustee must establish two prongs: (1) lack of reasonably equivalent value; and (2) insolvency. *Individual Business Servs. v. Carmack*, 2d Dist. Montgomery No. 24085, 2011-Ohio-1824, ¶ 69. The trustee is only seeking summary judgment on the issue of reasonably equivalent value.

The crux of the trustee's argument is that the debtors did not receive reasonably equivalent value for their payments to the Eliopouloses because the repayment agreement could not be performed within one year and so was not enforceable under the Statute of Frauds. The Ohio Statute of Frauds provides:

> No action shall be brought whereby to charge the defendant . . . upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith . . . .

Ohio Rev. Code § 1335.05. However, it is often said that:

> the "not to be performed within one year" provision of the Statute of Frauds . . . has been given a literal and narrow construction. . . . Thus, where the time for performance is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the Statute of Frauds.

*Sherman v. Haines*, 73 Ohio St. 3d 125, 127, 652 N.E.2d 698 (1995).

As with any agreement, whether an agreement to repay money in installments falls within the Statute of Frauds depends entirely on the precise terms of the agreement. *Compare Sherman*, 73 Ohio St. 3d at 129 (an agreement to "pay the $3,000.00 debt in monthly installments of $25.00" falls within the Statute of Frauds), *with Hosterman v. French*, 7th Dist. Columbiana No. 13 CO 24, 2014-Ohio-5855 (agreement with "no express terms, other than to repay the line of credit in monthly installments" falls outside the Statute of

8

Frauds).

> A promise that is not likely to be performed within a year, and that in fact is not performed within a year, is still not within the Statute of Frauds if at the time the agreement is entered into, there is a possibility in law and in fact that full performance may be completed within a year. *Ford v. Tandy Transp., Inc.*, 86 Ohio App. 3d 364, 382, 620 N.E.2d 996 (1993).

*Hosterman* at ¶ 17.

To support the trustee's position that the repayment agreement, by its terms, could not be performed within one year, the trustee relies on: (1) the fact stipulation that the agreement was to "repay the loan from the Eliopouloses by making all payments that came due upon the [Line of Credit] until such obligation was paid in full[;]" and (2) supporting documentation in the form of the New Line of Credit and the accompanying mortgage that show a maturity date of March 12, 2028. The defendants, however, argue that the repayment agreement was outside the Statute of Frauds by relying on the affidavit of Timothy Tsirambidis which states that the terms of the agreement were to "repay the loan from the Eliopouloses by making payments in the minimum amount of $500 per month . . . until [Timothy Tsirambidis] was able to pay the Line of Credit in full." In this context, such a disagreement as to the precise terms of the repayment agreement constitutes a genuine issue of material fact. Accordingly, the trustee's motion for

9

partial summary judgment must be denied.

Although the defendants did not formally move for summary judgment, both Fifth Third Bank and the Eliopouloses informally requested summary judgment in their briefs opposing the trustee's motion for partial summary judgment. The defendants argue that, even if the repayment agreement were unenforceable under the Statute of Frauds: (1) the reduction of the outstanding debt still constitutes "reasonably equivalent value;" and (2) the debt is enforceable under a theory of quasi-contract. The trustee did not brief these arguments.

The Bankruptcy Code does not define "reasonably equivalent value." *See Southeast Waffles, LLC v. United States Department of Treasury (In re Southeast Waffles, LLC)*, 702 F.3d 850, 857 (6th Cir. 2012). Nevertheless, the Ohio UFTA provides that "[v]alue is given for a transfer . . . if in exchange for the transfer . . . an antecedent debt is secured or satisfied[.]" Ohio Rev. Code § 1336.03(A). *See also* 11 U.S.C. § 548(d)(2)(A) (defining value as "satisfaction or securing of a present or antecedent debt of the debtor"). "Whether [a debtor] received reasonably equivalent value . . . is a question of fact." *Onkyo Europe Electronics GMBH v. Global Technovations Inc. (In re Global Technovations Inc.)*, 694 F.3d 705 (6th Cir. 2012) (quoting *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 Fed. App'x 337, 341 (6th Cir. 2006)). But "[t]ypically, a

dollar-for-dollar reduction in debt constitutes–as a matter of law–reasonably equivalent value for the fraudulent transfer statutes." *Southeast Waffles, LLC*, 702 F.3d at 857. "'A transfer is in exchange for value if one is the quid pro quo of the other.'" *Kaler v. Able Debt Settlement, Inc. (In re Kendall)*, 440 B.R. 526, 533 (B.A.P. 8th Cir. 2010) (quoting *Pummill v. Greensfelder, Hemker & Gale (In re Richards & Conover Steel Co.)*, 267 B.R. 602, 612 (B.A.P. 8th Cir. 2001)). But "[t]he mere fact that a contract is void, unenforceable, or illegal does not require a finding that there was no reasonably equivalent value given . . . ." *Id.* at 532 (discussing "reasonably equivalent value for purposes of § 548(a)(1)(B)); *Tabas v. Lehman (In re Capitol Investments, Inc.)*, 473 B.R. 838, 844-46 (Bankr. S.D. Fla. 2012) (collecting cases).

Additionally, the defendants argue that – even if the repayment agreement were unenforceable under the Statute of Frauds – the Eliopouloses could still enforce the agreement under a theory of quasi-contract. An oral agreement is enforceable under quasi-contract where:

> one party fully performs and the other party, to his unjust enrichment, receives and refuses to pay over money which, under the unenforceable contract, he agreed to pay the party who has fully performed.

*Hosterman*, 7th Dist. Columbiana No. 13 CO 24, 2014-Ohio-5855, at ¶ 20. The

Statute of Frauds does not affect the enforceability of an agreement under quasi-contract. *Id.* (citing *Hummel v. Hummel*, 138 Ohio St. 520, 14 N.E.2d 923 (1938)). As the Ohio Supreme Court noted in *Hummel v. Hummel*:

> An oral contract which is incapable of being performed within a year of the making thereof is unenforceable by reason of the Statute of Frauds, Section 8621, General Code; but where one party thereto fully performs on his part and the other contracting party, to his unjust enrichment, receives and refuses to pay over money which, under the unenforceable contract, he agreed to pay to the party who has fully performed, a quasi contract arises, upon which the performing party may maintain an action against the defaulting party for money had and received.

138 Ohio St. at 520, syl. ¶ 1, 14 N.E.2d 923. *See also Barber v. Golden Seed Co.*, 129 F.3d 382, 388-89 (7th Cir.1997) ("[E]ven a contract which is unenforceable because it fails to comply with a statutory writing requirement is enforceable if one side has fully performed.").

There is no dispute that the Eliopouloses gave a loan – not a gift – to the debtors in exchange for the debtors' promise to repay the Line of Credit and New Line of Credit with Fifth Third Bank. By giving the debtors the value of the loan, the Eliopouloses fully performed. Furthermore, the debtors' regular payments to Fifth Third Bank – over the course of nearly fifteen years – reduced their indebtedness to the Eliopouloses under any theory dollar-for-dollar. Finally, the fact that the oral agreement may be unenforceable in contract law does not require

12

a finding that no reasonably equivalent value was given or that the agreement could not be enforced in quasi-contract.

For these reasons, the Court believes the defendants themselves may be entitled to summary judgment; however, Rule 56(f) dictates that the Court not grant summary judgment for a nonmovant without first giving notice and a reasonable time to respond. Accordingly, the Court will give the trustee until December 14, 2015, to file a response. If the trustee responds by December 14, 2015, then the Court will take the matter under advisement. If the trustee does not file a timely response, then the Court will grant summary judgment for the defendants.

## CONCLUSION

For the reasons stated above, the trustee's motion for partial summary judgment on the issue of reasonably equivalent value is denied. Pursuant to Federal Rule of Civil Procedure 56(f) and Bankruptcy Rule 7056, the Court will give the trustee until December 14, 2015, to file a response. If the trustee responds by December 14, 2015, then the Court will take the matter under advisement. If the trustee does not file a timely response, then the Court will grant summary judgment for the defendants.

IT IS SO ORDERED.